**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WASHINGTON ALLIANCE OF TECHNOLOGY WORKERS,**<br><br>                    *Plaintiff,*<br><br>         v.<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY,**<br><br>                    *Defendant.* | **Civil Action No. 14-529 (ESH)** |

<u>**MEMORANDUM OPINION**</u>

      Plaintiff Washington Alliance of Technology Workers ("WashTech"), a collective-bargaining organization that represents science, technology, engineering, and mathematics ("STEM") workers, has sued the U.S. Department of Homeland Security ("DHS").  Plaintiff challenges defendant's approval of the Optional Practical Training ("OPT") program, which allows nonimmigrant foreign nationals on an F-1 student visa to engage in twelve months of employment during and following a full-time course load in a U.S. educational institution.  *See* 8 C.F.R. § 214.2(f)(10).  Plaintiff also challenges the seventeen-month extension to the OPT program instituted in April 2008 for eligible STEM students.  *See* 8 C.F.R. § 214.2(f)(10)(ii)(C).  Before the Court is defendant's motion to dismiss plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1).  (Mot. to Dismiss, Aug. 25, 2014 [ECF No. 10] ("Mot.").)  For the following reasons, the motion to dismiss is granted in part and denied in part.

**BACKGROUND**

F-1 visas allow foreign nationals to enter and remain in the United States temporarily to pursue a full course of study at an approved academic institution or language program. *See* 8 U.S.C. § 1101(a)(15)(F)(i). The F-1 visa is valid for the duration of status, defined as "the time during which an F-1 student is pursuing a full course of study at an educational institution approved by the [U.S. Citizenship and Immigration] Service for attendance by foreign students, or engaging in authorized practical training following completion of studies . . . ." 8 C.F.R. § 214.2(f)(5)(i). F-1 students have been able to engage in practical training on a temporary basis following the completion of their studies since 1947. *See* 12 Fed. Reg. 5355, 5357 (Aug. 7, 1947) (codified at 8 C.F.R. § 125.15(b) (1947)). The practical training component of the F-1 visa regulations has changed over time both in terms of the length of time available to nonimmigrant students to pursue temporary employment in the United States and whether this training may occur during or following their studies. Currently, F-1 students may apply for up to twelve months of OPT related to their field of study, and this time may be utilized during or following completion of degree requirements. *See* 8 C.F.R. § 214.2(f)(10). OPT participants are particularly attractive to U.S. companies because employers of F-1 visa holders are not required to pay Medicare and Social Security taxes for these nonresident foreign nationals. *See* 26 U.S.C. § 3121(b)(19).

In April 2008, DHS issued an interim final rule with request for comments that extended the period of OPT by seventeen months for F-1 students with a qualifying STEM degree. Extending Period of OPT by 17 Months for F-1 Nonimmigrant Students with STEM Degrees, 73 Fed. Reg. 18,944 (Apr. 8, 2008). The express purpose of this extension was to allow U.S. employers to recruit STEM-skilled employees who would otherwise find employment outside of

the United States due to the difficulty in obtaining an H-1B visa.  *Id.* at 18,946.  H-1B visas, which may be granted annually to foreign nationals in a specialty occupation to temporarily work in the United States, are limited and are highly oversubscribed.  *Id.*; *see* 8 C.F.R. § 214.2(h)(1)(ii)(B).  As part of the rulemaking in 2008, DHS cited a National Science Foundation report that found foreign nationals comprised a significant number of STEM students pursuing higher education in the United States, but that other countries are providing more career opportunities for foreign nationals trained in STEM fields.  73 Fed. Reg. at 18,946 (citing National Science Foundation, *Science and Engineering Indicators* (2008)).  This trend was creating intense international competition for highly-valued STEM employees.  *Id.*  The seventeen-month extension was designed to allow U.S. employers to more effectively compete for U.S.-educated, STEM-trained foreign nationals by allowing more time for these individuals to work in the country on an F-1 visa while they try to obtain an H-1B visa.  *Id.*  DHS estimated that 30,205 F-1 students would complete their OPT between April 1 and July 31, 2008, and approximately one third of these students had obtained a degree in a STEM field.  *Id.* at 18,950.  Therefore, this regulation had "the potential to add tens of thousands of OPT workers to the total population of OPT workers in STEM occupations in the U.S. economy."  *Id.*  DHS noted that the OPT seventeen-month extension for STEM students was initiated without notice and public comment "[t]o avoid a loss of skilled students through the next round of H-1B filings in April 2008."  *Id.*

        In its Complaint, plaintiff alleges that the twelve-month, post-completion OPT program[1] violates U.S. laws that govern student and employment visas for foreign nationals (Claims 1 – 3)

---

[1] Although the OPT regulations allow nonimmigrant foreign nationals to work both during and following a full course load as a student, plaintiff only challenges the program as applied to post-completion employment. (Compl. ¶ 2, n.1.)

(Compl., Mar. 28, 2014 [ECF No. 1] ¶¶ 155 – 186), and that the seventeen-month extension to

the OPT program for STEM students violates the Administrative Procedure Act, 5 U.S.C. § 500

*et seq*., (Claims 4 – 8).  (*Id.* ¶¶ 187 – 278.)  Plaintiff argues that the unlawful F-1 post-

completion OPT regulations caused injury to its members through increased competition for

STEM jobs.  (*Id.* ¶ 55.)  In particular, WashTech describes three of its members, Douglas Blatt

("Blatt"), Rennie Sawade ("Sawade"), and Ceasar Smith ("Smith")—all computer programming

specialists—who applied for STEM positions with many companies between 2008 and 2012 and

were not hired because, allegedly, these positions were offered to F-1 students pursuing an OPT

STEM extension.  (*Id.* ¶¶ 79 – 154.)  For example, Blatt, a computer programmer with an

information technology degree, applied for STEM positions at JP Morgan Chase, Ernst &

Young, IBM, and Hewlett Packard between 2010 and 2011.  (*Id.* ¶¶ 102 – 115.)  All of these

companies employed F-1 visa holders who applied for OPT extensions available for STEM

students.  (*Id.*)  Sawade and Smith have similar backgrounds and were also rejected from

multiple STEM positions since 2008.  (*Id.* ¶¶ 79 – 101, 124 – 154.)

Defendant has filed a motion to dismiss, arguing that (1) plaintiff lacks Article III

standing to bring any of its claims because it has not sufficiently pled an injury-in-fact to any of

its members, and (2) Claims 1 – 3 are barred by the six-year statute of limitations for civil

actions filed against the United States.  The Court agrees that plaintiff does not have standing to

bring its first three claims, but WashTech has sufficiently established standing to proceed with its

remaining five claims.

## ANALYSIS

### I.      STANDING

To establish constitutional standing, plaintiff must demonstrate that (1) it has suffered an injury-in-fact, (2) the injury is fairly traceable to the defendant's challenged conduct, and (3) the injury is likely to be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014).  Plaintiff bears the burden of establishing each element of standing.  *See Lujan*, 504 U.S. at 561. However, on a motion to dismiss, the Court "'must accept as true all material allegations of the Complaint, and must construe the Complaint in favor of the complaining party.'"  *Ord v. Dist. of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

DHS argues that the plaintiff's alleged injuries do not satisfy the injury-in-fact requirement of Article III standing.  As defendant correctly notes (Mot. at 9), plaintiff does not allege in its Complaint that it was harmed as an organization; however, "an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977).  To establish associational standing to sue on behalf of its members, plaintiff must show that "'(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit.'" *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (quoting *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002)).  It is uncontested that WashTech is a collective-bargaining association that operates on behalf of its members, satisfying the last two elements of

associational standing.  The parties, however, dispute whether a WashTech member was injured-in-fact and would thus have standing in his own right.  To establish this element, plaintiff relies primarily on the doctrine of competitor standing.

Competitor standing doctrine recognizes that a party suffers a cognizable injury under Article III when "'agencies lift regulatory restrictions on their competitors or otherwise allow[] increased competition.'"  *Mendoza*, 754 F.3d at 1011 (quoting *La. Energy and Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998)).  The competitor standing doctrine typically arises in the context of establishing a constitutionally adequate injury-in-fact, and it has established that agency action benefiting a plaintiff's competitor can have a direct effect on a plaintiff association or one of its members.  *See Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 724 F.3d 206, 212 (D.C. Cir. 2013) (U.S. truck drivers had standing because agency program increased the competition they faced when the Department of Transportation lifted restrictions on Mexico-domiciled drivers operating in United States); *Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010) (researchers had standing to challenge regulatory guideline that increased competition for stem-cell research grants); *La. Energy and Power Auth.*, 141 F.3d at 367 (plaintiffs merely needed to show they were direct competitor of energy company that received an advantage as a result of the agency action and injury assumed for standing purposes).  "A party seeking to establish standing on the basis of competitor standing doctrine 'must demonstrate that it is a direct and current competitor whose bottom line may be adversely affected by the challenged government action.'"  *Mendoza*, 754 F.3d at 1013 (quoting *KERM, Inc. v. FCC*, 353 F.3d 57, 60 (D.C. Cir. 2004)).

### A.  Claims 1 – 3

Plaintiff's first three claims challenge the twelve-month OPT program, but the Complaint does not identify a single WashTech member who has suffered an injury as a result of the twelve-month OPT program.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) ("Plaintiff-organizations [must] make specific allegations establishing that at least one identified member had suffered or would suffer harm."); *see also Chamber of Commerce v. EPA*, 642 F.3d at 199-200 ("[I]t is not enough to aver that unidentified members have been injured.  Rather, the petitioner must specifically identify members who have suffered the requisite harm." (internal quotation marks and citations omitted)).  According to the Complaint, the three named WashTech members only applied for STEM positions between 2008 and 2012 and were unable to obtain those positions because they were filled by OPT 17-month extension recipients.  There is no allegation that any injury to the named members occurred prior to the 2008 OPT extension for STEM students. [2]  Thus, because plaintiff has not identified a member of its association who suffered any harm from the twelve-month OPT program, it does not have standing to challenge the OPT program on behalf of its members. [3]

---

[2] Plaintiff tries to argue that it need not identify current injuries from the ongoing job searches of WashTech members because it alleged procedural injuries.  (Opp. to Mot. to Dismiss, Sept. 8, 2014 [ECF No. 11] ("Opp.") at 5) (citing *Lujan*, 504 U.S. at 571-72).  However, procedural claims do not lower the threshold for establishing an injury-in-fact, the only element of standing at issue in defendant's motion to dismiss.  *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 ("[T]he courts relax—while not wholly eliminating—the issues of imminence and redressability, but not the issues of injury in fact or causation.").

[3] In the alternative, plaintiff's Claims 1 – 3 are barred by the statute of limitations on civil suits brought against the United States.  "Unless another statute provides otherwise, civil claims against the United States—including those brought pursuant to the APA—are subject to the statute of limitations contained in 28 U.S.C. § 2401, which allows for civil actions against the United States so long as 'the complaint is filed within six years after the right of action first accrues.'"  *Mendoza*, 754 F.3d at 1018 (D.C. Cir. 2014) (quoting *Harris v. F.A.A.*, 353 F.3d 1006, 1009 (D.C. Cir. 2004)).  The only exception to the statute of limitations is if DHS reopened the post-completion OPT program for reconsideration in a subsequent rulemaking, in

**B. Claims 4 – 8**

Plaintiff's remaining five claims challenge the legality of the seventeen-month extension
of the OPT program for STEM students.  (Compl. ¶¶ 187 – 278.)  DHS argues that plaintiff has
failed to provide sufficient detail of the three named members' training and employment
circumstances to establish an injury-in-fact arising from competition.  (Mot. at 13.)  In particular,
plaintiff did not enumerate the specific positions to which its named members applied or planned
to apply in the future, their qualifications for the job, or whether the position applied for was
filled by an OPT student on a seventeen-month STEM extension.  *Id.*  These omissions are not,
however, fatal to plaintiff's standing, for such a close nexus is not required.  *See Honeywell
Intern Inc. v. EPA*, 374 F.3d 1363, 1368 (D.C. Cir. 2004) (chemical manufacturer had standing
because the challenged regulation could lead customers to seek out the manufacturer's
competitors in the future); *Int'l Union of Bricklayers and Allied Craftsmen*, 761 F.2d at 802
(D.C. Cir. 1985) (standing found despite lack of details regarding specific future jobs as to which
U.S. bricklayers would compete with foreign laborers); *Int'l Longshoremen's and*

---

which case the statute of limitations would begin anew.  *See Mendoza*, 754 F.3d at 1019, n.12
("[R]eopener doctrine permits a plaintiff to bring an otherwise-stale challenge where the agency
'has undertaken a serious, substantive reconsideration of the existing rule'" or substantively
changed it.) (quoting *P & V Enters. v. U.S. Army Corps of Engineers*, 516 F.3d 1021, 1023-24
(D.C. Cir. 2008)).

The Court treats the 1992 regulation on post-completion training available to nonimmigrant
students as the existing rule because it established and named the twelve-month OPT program as
it currently operates.  57 Fed. Reg. 31,954 (1992).  In the subsequent 2008 rulemaking DHS did
not reconsider the substance of the existing rule that authorized nonimmigrants with F-1 visas to
remain in the country during a temporary period of employment following completion of their
studies.  On the contrary, in seeking comments on the 2008 extension, DHS did not open the
door to comments on the general twelve-month OPT program.  The agency action merely
expanded the length of time an F-1 visa holder trained in a narrow set of skills could remain in
the OPT program.  Although the authorized extension more than doubled the length of practical
training available to STEM students, it is narrowly tailored to affect only a select group of
nonimmigrant students who apply for the extension.  This modification does not suggest that
DHS reopened the existing rule by seriously reconsidering or substantively changing it.  Thus,
the six-year statute of limitations applies, barring plaintiff's first three claims.

*Warehousemen's Union v. Meese*, 891 F.2d 1374, 1379 (9th Cir. 1989) (union had standing to challenge Immigration and Naturalization Service regulation without pleading specific job opportunities lost to Canadian longshoremen).  *Cf. Sierra Club v. Jewell*, 764 F.3d 1, at *6 (D.C. Cir. 2014) (plaintiff's members need not set foot on disputed property to have interest in enjoying it for the purpose of establishing injury).

In *Mendoza*, for example, the Court held that plaintiffs had standing, but were not required to show that they applied for and were denied a specific position that was filled by a competitor.  754 F.3d 1002.  There, the Department of Labor changed special procedures that established the minimum wage and working conditions requirements for U.S. sheepherders and goatherders.  The plaintiffs did not work as herders nor had they applied for herder positions at the time the action was filed, but the Court held that "[t]he plaintiffs are not removed from the herder labor market simply because they do not currently work as herders and have not filled out formal job applications." *Mendoza*, 754 F.3d at 1014.  The same rationale applies here.  The three named WashTech members that plaintiff describes in its Complaint are part of the computer programming labor market, a subset of the STEM market.  (Compl. ¶¶ 79, 102, 124.) The Complaint sufficiently establishes that these three members are specialized in computer technology, and they have sought out a wide variety of STEM positions with numerous employers, but have failed to obtain these positions following the promulgation of the OPT STEM extension in 2008.  (Compl. ¶¶ 79 – 154.)  And the specific employers with whom these members sought STEM positions employed students who applied to DHS for STEM extensions during the relevant time frame.  *Id*.  Plaintiff further alleges that OPT program participants pursuing a STEM extension enjoyed substantial advantages over WashTech members given the tax benefits available to employers of F-1 visa holders.  The seventeen-month extension to the

OPT program swells the number of foreign nationals in the STEM labor market where WashTech members must compete.  Indeed, the regulation was designed with this purpose in mind.  *See* 73 Fed. Reg. at 18,953 ("This rule will . . . add[] an estimated 12,000 OPT students to the STEM-related workforce. . . . [T]his number represents a significant expansion of the available pool of skilled workers.").  Plaintiff has sufficiently alleged that its named members face increased competition as a result of the 2008 interim final rule.

Although the STEM labor market is broader than the herder labor market at issue in *Mendoza*, at the motion to dismiss stage, the Court must draw all fair inferences in favor of the plaintiff.  It is reasonable to infer that the named members, who have technology-related degrees in the computer programming field and have applied for STEM employment during the relevant time period, were in direct and current competition with OPT students on a STEM extension. This competition resulted in a concrete and particularized injury.  Thus, plaintiff's Complaint as to Claims 4 – 8 is sufficient to establish Article III standing.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's Complaint will be granted in part and denied in part.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   November 21, 2014