UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
WASHINGTON ALLIANCE OF                  )
TECHNOLOGY WORKERS,                     )
                                                        )
      Plaintiff,                                 )
                                                        )
      v.                                              )   Civil Action No. 14-529 (ESH)
                                                        )
U.S. DEPARTMENT OF HOMELAND    )
SECURITY                                         )
                                                        )
      Defendant.                              )
                                                        )
_____ )

## MEMORANDUM OPINION

Defendant Department of Homeland Security ("DHS") has moved under Federal Rule of Civil Procedure 60(b)(6) for limited relief from the Court's August 12, 2015 Order. (Def.'s Mot. for Limited Relief [ECF No. 47].) In relevant part, that Order vacated on procedural grounds an interim final rule promulgated by DHS, but it stayed the effect of vacatur for six months in order to allow DHS to cure those procedural defects. (*See* Mem. Op. [ECF No. 43] at 37 (issued Aug. 12, 2015).) At present, the stay is set to expire on February 12, 2016. (*See* Aug. 12, 2015 Order.) DHS now seeks to extend the stay by approximately ninety days, which it claims is necessary in order to issue a new rule in place of the vacated interim rule, thereby avoiding a regulatory gap. (Def.'s Mot. for Limited Relief at 1.) Plaintiff opposes DHS's motion, arguing that (1) the Court lacks jurisdiction to grant the requested relief due to plaintiff's pending appeal to the D.C. Circuit, and (2) DHS fails to show "extraordinary circumstances" warranting relief under Rule 60(b)(6). (*See* Pl.'s Opp'n [ECF No. 49] at 5-6.) For the reasons that follow, DHS's motion for limited relief will be granted.

**BACKGROUND**

The facts of this dispute have been laid out in greater detail in the Court's prior opinion. (*See* Mem. Op. at 1-5.) As relevant here, DHS permits nonimmigrant foreign nationals on an F-1 student visa to receive optional practical training ("OPT") during and after completing their studies at a U.S. educational institution. *See* 8 C.F.R. § 214.2(f)(10)(ii). In April 2008, DHS promulgated an interim final rule that extended the maximum OPT period from twelve months to twenty-nine months for students with qualifying degrees in science, technology, engineering, or math ("STEM"). *See* Extending Period of Optional Practical Training by 17 Months for F-1 Nonimmigrant Students with STEM Degrees and Expanding Cap-Gap Relief for All F-1 Students With Pending H-1B Petitions, 73 Fed. Reg. 18,944 (Apr. 8, 2008) (the "2008 Rule"). DHS issued the 2008 Rule without notice and public comment. *See id.* at 18,950. It claimed that the need "[t]o avoid a loss of skilled students through the next round of H-1B filings in April 2008" provided it with "good cause" to dispense with notice-and-comment under 5 U.S.C. § 553(b). *See id.*

Plaintiff filed suit in March 2014 raising numerous challenges to the OPT program, and in particular, whether DHS had good cause to waive notice-and-comment before promulgating the 2008 Rule. (*See* Compl. [ECF No. 1] ¶¶ 229-49.) In March 2015, the parties cross-moved for summary judgment. (Pl.'s Cross Mot. for Summ. J. [ECF No. 25]; Def.'s Mot. for Summ. J. [ECF No. 27].) DHS argued that "good cause" existed because an economic crisis would have resulted if the 2008 Rule had not been immediately issued, as the U.S. high-tech sector would have lost much-needed STEM workers to foreign competitors. (*See* Def.'s Mot. for Summ. J. at 42-45.) The Court held otherwise, finding no justification for waiving notice-and-comment—even accepting the importance of STEM workers to the economy, DHS had long been aware of

the purported "emergency" and had failed to act until 2008. (*See* Mem. Op. at 32-34.) The Court further held that the appropriate remedy was vacatur of the 2008 Rule, but it found that "substantial hardship for foreign students and a major labor disruption for the technology sector" would result if "thousands of young workers had to leave their jobs in short order." (*Id.* at 36.) Therefore, it stayed the effect of vacatur for six months to allow DHS enough time to promulgate a replacement rule. (*Id.* at 37.)

## ANALYSIS

**I.   LEGAL STANDARD**

A district court has discretion under Rule 60(b) to relieve a party from a final order for a series of specific, enumerated reasons or for "any other reason that justifies relief." *See* Fed. R. Civ. P. 60(b)(6); *Murray v. Dist. of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995). To invoke this "catch-all" provision, the movant must demonstrate that (1) none of the enumerated grounds for relief are applicable, *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007), (2) the motion was "made within a reasonable time," Fed. R. Civ. P. 60(c)(1), and (3) the requested relief is justified by extraordinary circumstances that are beyond the movant's control, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). The "extraordinary circumstances" requirement derives from the principle that "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *See Ackermann v. United States*, 340 U.S. 193, 198 (1950). As such, the Court "must balance the interest in justice with the interest in protecting the finality of judgments." *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004).

## II.     JURISDICTION

Plaintiff first argues that its pending appeal to the D.C. Circuit divests this Court of jurisdiction to grant the requested relief, unless the Court first issues an indicative ruling and then seeks remand of the case from the Circuit.  (*See* Pl.'s Opp'n at 5-6.)  It is true that the filing of a notice of appeal confers jurisdiction on the court of appeals, but "the district court only surrenders 'its control over those aspects of the case involved in the appeal.'"  *See Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 548 (D.C. Cir. 1988) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)).  Moreover, divestiture during appeal is a prudential, "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time.  It should not be employed to defeat its purposes nor to induce needless paper shuffling."  *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988) (quoting 9 James Wm. Moore *et al.*, Moore's Federal Practice ¶ 203.11 (2d ed. 1987)).  In *Kern Oil*, for instance, the Ninth Circuit held that the district court retained jurisdiction to enter findings of fact while an appeal was pending, because requiring a remand solely to enter the necessary findings would be unduly formalistic.  *See* 840 F.2d at 734 ("A better example of 'needless paper shuffling' would be hard to imagine.").  In doing so, the court distinguished cases in which the district court impermissibly *amended* findings of fact while an appeal was pending, which affected the issues being considered by the appeals court.  *See* 840 F.2d at 734.

Thus, the Court must determine whether consideration of the stay extension would create confusion and inefficiency—because that issue is already before the Circuit—or whether seeking remand would itself be nothing more than inefficient paper shuffling.

4

Plaintiff states broadly that "remedy is a specific issue on appeal," and therefore, the Court has been divested of jurisdiction to grant the requested relief. (Pl.'s Opp'n at 5.) However, plaintiff does not offer any further explanation than that, and a review of its opening appellate brief makes clear that the issue before the Circuit is distinct from the issues raised here by defendant's motion. (*See* Opening Br. of Pl.-Appellant [Doc. 1589829], Case No. 15-5239 (D.C. Cir. Dec. 21, 2015).) In short, plaintiff has argued to the appeals court that it was improper for this Court to stay its vacatur of the interim rule, because doing so enabled DHS to defeat the purpose of notice-and-comment "by insincerely going through the motions" of re-implementing the very same policy. (*See id.* at 54-55.) By contrast, DHS's motion for limited relief does not invite the Court to reconsider the *propriety* of its stay, but simply asks for an extension because unexpected circumstances have made it impossible to avoid the regulatory gap that would be caused by the stay's February 12th expiration. (*See* Def.'s Mot. for Limited Relief at 1.) If, on appeal, the Circuit ultimately agrees with plaintiff that the stay was improper, then nothing this Court has said or done in temporarily extending the status quo will have impeded that determination. *Cf. Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (stay of injunctive relief pending appeal is generally "preventative, or protective; it seeks to maintain the status quo" pending the appeals court's determination); *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989) (district court retains jurisdiction to modify stay of injunctive relief pending appeal, as long as the modification preserves the status quo).[1]

---

[1] The parties dispute whether the Court's stay is a type of injunction, which would allow it to be modified under Rule 62(c) without first seeking remand from the Circuit. (*See* Def.'s Reply Br. at 2-3.) Plaintiff cites the Supreme Court's decision in *Nken v. Holder*, 556 U.S. 418 (2009), for the proposition that a stay is not the same as an injunction. *See Nken*, 556 U.S. at 428-30. Plaintiff is correct that *Nken* distinguished injunctions and stays pending appeal, *see id.*, but this

Because an extension of the stay would not have any effect on the issues currently on appeal, the Court finds that it retains jurisdiction over defendant's motion and need not seek remand. *See* Committee Notes on Rules—2009, Fed. R. Civ. P. 62.1 ("If the district court concludes that it has authority to grant relief without appellate permission, it can act without falling back on the indicative ruling procedure"). In fact, if the stay expires as scheduled on February 12, 2016, then that would almost certainly render plaintiff's appeal of the stay moot. (*See* Clerk's Order [Doc. 1587112], Case No. 15-5239 (D.C. Cir. Dec. 7, 2015) (noting that appellate briefing will not conclude until February 24, 2015); *see also Monzillo v. Biller*, 735 F.2d 1456, 1457 (D.C. Cir. 1984) ("Because the court's order has expired on its own terms, we dismiss these appeals as moot.").) In other words, rather than interfering with the D.C. Circuit's jurisdiction, a three-month extension would actually *protect* it, making it conceivable that the Circuit could rule on the stay's propriety before that issue becomes moot.

### III. RULE 60(b)(6)

As discussed, Rule 60(b)(6) vests the Court with discretion to relieve DHS from the effect of the August 12, 2015 Order for "any other reason that justifies relief," provided that certain conditions are met. *See* Fed. R. Civ. P. 60(b)(6). The parties do not dispute the fact that the catch-all provision is properly invoked here, because none of the other grounds for relief under Rule 60(b) is applicable. Nor do they dispute that the motion was made within a

---

Court did not issue a stay pending appeal. Instead, it exercised its "power to delay the [vacatur] . . . for a reasonable period" in order to avoid "a temporary regulatory vacuum." *See Small Refiner Lead Phase-Down Task Force v. U.S.E.P.A.*, 705 F.2d 506, 545 (D.C. Cir. 1983). Moreover, the Court is considering a Rule 60(b)(6) request for relief, not a Rule 62(c) request for injunctive modification. While it is true under *Nken* that injunctions and stays are not exactly the same, the injunction analogy is instructive. Just as injunctive modifications during a pending appeal are permissible if they maintain the status quo, a stay extension here would do the same.

reasonable time—approximately thirty days after the close of the public comment period, when DHS "determined with a reasonable degree of certainty" that it would not be able to meet the February 12, 2016 deadline. (*See* Def.'s Mot. for Limited Relief at 4.)  As such, the only issue before the Court is whether "extraordinary circumstances" exist that warrant modifying the Court's previous Order.

DHS argues that its unexpected inability to promulgate a replacement rule before the stay's expiration constitutes extraordinary circumstances. (*See id.* at 5-9.)  It states that, at the time the Court entered its six-month stay, it believed it could meet the Court's deadline and thereby avoid a regulatory gap. (*See* Decl. of Rachel Canty [ECF No. 47-1] ¶ 5.)  As such, it published a Notice of Proposed Rulemaking on October 19, 2015, and sought comments from the public. (*Id.* ¶¶ 3, 11.)  However, it then received an "unexpected and unprecedented" public response—50,500 comments, more than it received in response to its "next four most-commented-on DHS rules combined." (*Id*. ¶ 5.)  Moreover, the content of those comments suggested that the new rule would create "substantial uncertainty and confusion" without extensive training of agency personnel and outreach to the regulated community. (*See id.* ¶ 6.)[2] Therefore, DHS argues, when considered alongside the hardship that a regulatory gap would cause participating workers and employers, these difficulties constitute extraordinary circumstances justifying limited relief. (*See* Def.'s Mot. for Limited Relief at 8-9.)

---

[2] Plaintiff does not meaningfully dispute these assertions, but only questions how many comments are significant enough to require a response by DHS. (See Pl.'s Opp'n at 7 n.1.) Plaintiff also suggests that DHS has intentionally provided the public with conflicting guidance in order "to maximize the vacatur order's disruptive effect." (*Id.* at 15.)  Even if the Court were to credit something an immigration law firm reports that a DHS field office allegedly told a *third* party (the American Immigration Lawyers Association (*id.*)), it would not find bad faith merely because DHS offered guidance and subsequently corrected it.

In response, plaintiff offers examples of circumstances that have been deemed sufficiently "extraordinary" to justify relief: disclosure of a previously undisclosed fact so material that it calls the initial judgment into question; gross attorney negligence; or a litigant's disabling illness, which would be exacerbated by participation in litigation. (*See* Pl.'s Opp'n at 4.) The implication, of course, is that DHS's proffered circumstances do not meet the standard— discovery of material facts that pre-date the judgment can be sufficient, but facts that did not exist at the time of the judgment are not. Indeed, plaintiff argues that granting relief under Rule 60(b) where such circumstances arose after the judgment's entry would "undermine the finality of judgments . . . [and] make the litigated process open-ended." (*Id.* at 17-18.) Plaintiff may indeed be correct where relief is sought from a monetary judgment, but a change in circumstances post-judgment is properly considered where the judgment has a prospective effect. *See* Fed. R. Civ. P. 60(b)(5).[3]

This case presents an unusual situation, in which the Court delayed the effectiveness of its own judgment for six months, in order to allow DHS to engage in notice-and-comment rulemaking and thereby avoid a regulatory gap. (*See* Mem. Op. at 37.) At that time, the Court believed that six months would be sufficient for those purposes, and apparently so did DHS. (*See* Decl. of Rachel Canty ¶ 5.) However, subsequent events have proven the Court's timetable for re-promulgation to be overly optimistic, thus warranting an extension. (*See* Def.'s Mot. for Limited Relief at 1-2.) The Court finds such a circumstance analogous to relief under Rule 60(b)(5), which allows a court to modify an order granting an injunction or consent decree if

---

[3] Further illustrating this point, plaintiff argued at a January 21, 2016 hearing that, if a plaintiff who suffered property damage received a $100,000 judgment, no court would grant post-judgment relief if the plaintiff later learned that the damage cost twice as much to repair. (*See* Jan. 21, 2016 Hearing Tr. at 52:13-20.) But plaintiff's own example addresses only relief from a monetary judgment, not a judgment with prospective effect.

changed circumstances make that relief "no longer equitable." *See* Fed. R. Civ. P. 60(b)(5); *Horne v. Flores*, 557 U.S. 433, 447 (2009) (Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest") (internal quotations omitted). In other words, changed circumstances have proven the assumptions underlying the stay's length to be unrealistic, and thus ending the stay after only six months is no longer equitable.

By the same token, the equities that warranted a stay in the first place—undue hardship to STEM OPT participants and employers—remain the same. The significance of that hardship cannot be overstated. According to DHS, there are approximately 23,000 STEM OPT participants; 2,300 dependents of STEM OPT participants; 8,000 pending applications for STEM OPT extensions; and 434,000 foreign students who might be eligible to apply for STEM OPT authorizations. (*See* Jan. 21, 2016 Hearing Tr. at 39:16-20; 40:9-10, 20-21; 41:14-16.) If the stay is not extended, many of these people would be adversely affected, either by losing their existing work authorization, not being able to apply for the OPT extension, or not knowing whether they will be able to benefit from the extension in the future. And of course, the U.S. tech sector will lose employees, and U.S. educational institutions could conceivably become less attractive to foreign students. The Court does not doubt that U.S. tech workers might feel some adverse effect from a ninety-day extension, but it has not been provided with any reliable data to support this proposition, and thus, it finds that the balance of equities clearly weighs in favor of an extension. Therefore, the limited relief sought by DHS is warranted under Rule 60(b)(6).

Plaintiff's remaining arguments to the contrary are unavailing. It first argues that relief under Rule 60(b)(6) cannot be grounded on harm to third parties not present before the Court,

and thus no consideration should be given to the disruption that would be imposed on those workers currently present in the U.S. under a STEM OPT extension (or their employers). (*See* Pl.'s Opp'n at 13 (noting that "[n]o OPT beneficiary or 'tech sector' employer ever sought to appear as *amicus* in this proceeding").)  What plaintiff fails to recognize is that "Rule 60(b)(6) is essentially an equitable catch-all provision," *see, e.g.*, *In re Korean Air Lines Disaster of Sept. 1, 1983*, 156 F.R.D. 18, 23 (D.D.C. 1994), which by necessity requires consideration of the public interest.  *See U.S. Bancorp Mort. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994) ("As always when federal courts contemplate equitable relief, our holding must also take account of the public interest."); *see also In re Mid-Atl. Fuels, Inc.*, 121 B.R. 207, 211 (Bankr. S.D.W. Va. 1990) (granting relief under Rule 60(b)(6) in order to prevent migration of hazardous substances and resultant harm to public).  As such, in balancing the equities, the Court has properly considered the significant hardship that a regulatory gap would cause for current and future participants in the STEM OPT program.

Next, it argues that DHS's difficulties are entirely self-inflicted, resulting from "strategic choices" from which the Court should not now relieve it.  (Pl.'s Opp'n at 6-16.)  First, it claims that DHS should have anticipated the Court's August 12, 2015 vacatur and begun promulgating a new rule as early as August 8, 2008, when it promulgated the now-vacated rule.  (*See id.* at 7-8.)  That is, DHS should have recognized all along that it lacked good cause to do away with notice-and-comment, as this Court ultimately held, and that failure to do so was self-inflicted.  (*See id.*) It also faults DHS for not taking corrective measures in response to an earlier challenge to the 2008 Rule, even though the district court and Third Circuit both found that the challenger lacked standing.  (*See* Pl.'s Opp'n at 8 (discussing *Programmers Guild, Inc. v. Chertoff*, 338 F. App'x 239 (3d Cir. 2009)).)  The Court is not aware of any doctrine or case law that holds that a litigant

should be penalized for advancing a non-frivolous argument, or for failing to anticipate the argument's rejection. DHS has argued to this Court that it was exempt from notice-and-comment requirements, and although the Court ultimately held otherwise, DHS had a good faith basis to make that argument. The mere fact that DHS did not take corrective action years earlier, *in anticipation of the Court's 2015 ruling*, is not a "self-inflicted" wound that disqualifies it from relief.

Similarly, plaintiff argues that the need to train DHS staff and educate the public about the new rule is also self-inflicted, because DHS made the "strategic choice" to make a "comprehensive rule change[]." (*See* Pl.'s Opp'n at 10-12.) Here, plaintiff is arguing out of both sides of its mouth. On one hand, it faults DHS for offering a "meaningless, *pro forma* notice and comment period" when it had already decided to reaffirm the 2008 policy (*see id.* at 19-23); on the other hand, it faults DHS for offering a replacement rule that varies from the original (*see id.* at 10-12). The Court stayed its vacatur in order to allow DHS to "submit the 2008 Rule for proper notice and comment," but that stay was not conditioned upon the exact same rule being promulgated again. (*See* Mem. Op. at 36-37.) In fact, DHS had a legal obligation to reevaluate its policies in promulgating the new rule based on current circumstances. *See* 5 U.S.C. 553(c). DHS's decision to incorporate public feedback into the proposed rule—including feedback offered by labor groups like plaintiff to "prevent[] adverse effects to U.S. workers" (*see* Def.'s Mot. for Limited Relief at 1 n.1)—responds to the very criticisms leveled at it by plaintiff throughout this litigation. Moreover, the confusion felt by commenters was by no means a foregone conclusion once DHS decided to amend the 2008 Rule. *See* Improving and Expanding Training Opportunities for F-1 Nonimmigrant Students With STEM Degrees and Cap-Gap Relief for All Eligible F-1 Students, 80 Fed. Reg. 63,375 (Oct. 19, 2015) (proposed changes to

2008 Rule would include (1) extending the 17-month STEM OPT extension to 24 months, (2) adding the possibility of a second 24-month extension, and (3) creating an employer certification process designed to protect U.S. workers).  Finally, there is no suggestion in the record that DHS has dragged its feet in any way in issuing the new rule.  To the contrary, it is undisputed that DHS has taken an "'all-hands-on-deck' approach, in which multiple offices from throughout DHS and other agencies helped develop and review the draft regulation on an expedited basis." (*See* Decl. of Rachel Canty ¶ 9.)  As such, the Court finds no merit to the argument that the changes proposed by DHS—or the uncertainty those changes have occasioned—disqualify DHS from the limited relief it seeks here.

Finally, plaintiff argues that DHS has failed to give proper notice-and-comment for the 2015 Proposed Rule (*see* Pl.'s Opp'n at 19-23), but that issue is not before the Court at this time. The only issue pending now is whether vacatur of the *prior* rule should be stayed for an additional ninety days, and the Court has found that it should.  Plaintiff indicates that, even if DHS's motion is granted, the parties will "be back in court litigating over [the replacement] rule" and whether it was properly issued. (*Id*. at 22.)  The Court has little reason to doubt this assertion, but the replacement rule can only be challenged in future litigation.

In closing, the Court notes that it has considered the need to protect the finality of its judgments, but as stated, it has concluded that the limited modification requested here is warranted.  Nonetheless, it emphasizes that it will not consider any additional requests for relief.

## CONCLUSION

DHS's motion for limited relief will be **GRANTED**, and the Court's August 12, 2015 stay of vacatur will be extended until May 10, 2016.  A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: January 23, 2016