UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WASHINGTON ALLIANCE OF
TECHNOLOGY WORKERS,

*Plaintiff*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

*Defendant.*

Civil Action No. 14-529 (ESH)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Washington Alliance of Technology Workers ("WashTech") moves for an award of attorney's fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, following its challenge to various rules issued by the Department of Homeland Security ("DHS"). *See Wash. Alliance of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 2015 WL 9810109, at *16 (D.D.C. Aug. 12, 2015). The Court rejected a number of WashTech's claims, but it did vacate one of the rules due to DHS's failure to provide notice and comment. *See id.* For the reasons that follow, plaintiff's motion will be granted in part and denied in part.

**BACKGROUND**

WashTech filed its complaint in 2014, which contained nine claims challenging a DHS program that allows F-1 student visa holders to engage in optional practical training ("OPT") after completion of their studies. (*See* Am. Compl. [ECF No. 20] ¶¶ 155-282.) Counts I-III attacked the OPT program as a whole, alleging that it was unlawful to allow "students" to remain in the U.S. and work after they had graduated. (*See id.* ¶¶ 155-86.) These claims were dismissed

early in the case, after the Court found that plaintiff lacked standing to pursue them.  *See Wash. Alliance of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247, 252 (D.D.C. 2014).  The remaining six counts attacked a DHS rule promulgated in 2008 that extended the maximum OPT period from twelve to twenty-nine months for participants with degrees in science, technology, engineering, or math ("STEM"), as well as subsequent amendments to the 2008 Rule.  (*See* Am. Compl. ¶¶ 186-282.)  The Court rejected plaintiff's claim that DHS exceeded its statutory authority by issuing the 2008 Rule, which it deemed plaintiff's "principal argument."  *See Wash. Alliance of Tech. Workers*, 2015 WL 9810109, at *8-*13.  However, plaintiff succeeded on its claim that DHS lacked good cause to avoid notice and comment when promulgating the 2008 Rule.  *Id.* at *15.  The Court determined that the appropriate remedy was to vacate the rule and its subsequent amendments, but it stayed the effect of vacatur for six months to avoid a regulatory gap while DHS subjected the rule to notice and comment.  *Id.* at *16.[1]

Rather than repromulgate the 2008 Rule in its entirety, DHS opted to enact a similar replacement that, *inter alia*, further extended the maximum STEM OPT period to thirty-six months.  *See* Improving and Expanding Training Opportunities for F–1 Nonimmigrant Students With STEM Degrees and Cap-Gap Relief for All Eligible F–1 Students, 81 Fed. Reg. 13,039, 13,040 (Mar. 11, 2016).  However, after publishing that proposed rule, DHS received an unprecedented number of public comments, which prevented it from finalizing the rule prior to expiration of the stay of vacatur.  *See Wash. Alliance of Tech. Workers v. U.S. Dep't of*

---

[1] Given that result, the Court had no need to address plaintiff's remaining claims that DHS arbitrarily and capriciously promulgated the 2008 Rule (Count IV), that DHS violated regulations governing incorporation by reference (Count VI), and that DHS's amendments of the 2008 Rule were procedurally infirm (Counts VII-VIII).  *See Wash. Alliance of Tech. Workers*, 2015 WL 9810109, at *16 n.14.

*Homeland Sec.*, 2016 WL 308775, at *3 (D.D.C. Jan. 23, 2016).  It thus moved for a three-month

extension of the stay, which the Court granted over plaintiff's opposition.  *See id.* at *5.  The

extended stay expired on May 10, 2016, *see id.*, and the following day the replacement rule was

finalized.

WashTech appealed a number of the Court's rulings, including the stay extension, but

before the Court of Appeals could issue an opinion, the replacement rule had gone into effect and

thereby mooted the appeal.  *See Wash. Alliance of Tech. Workers v. Dep't of Homeland Sec.*,

2016 WL 3041029, at *1 (D.C. Cir. May 13, 2016).  The Circuit dismissed the appeal and

vacated this Court's judgment.  *See id.*

Plaintiff now moves for reimbursement of $465,002.62 in fees, expenses, and costs,

including those incurred on appeal.  (*See* Mot. for Attorney Fees [ECF No. 56] at 1.)

## ANALYSIS

Under the EAJA, a party seeking a fee award must submit an application showing (1) that

it is a prevailing party, (2) its statutory eligibility to receive an award, and (3) the amount sought,

including an itemized statement breaking down that claim for reimbursement.  *See* 28 U.S.C. §

2412(d)(1)(B).  It must also "allege that the position of the United States was not substantially

justified."  *Id.*  Once that allegation is made, "[t]he burden of establishing that the position of the

United States was substantially justified . . . must be shouldered by the Government."  *See*

*Scarborough v. Principi*, 541 U.S. 401, 414 (2004) (internal quotations omitted).

DHS argues both that plaintiff was not a "prevailing party" and that its litigation position

was "substantially justified."  Alternatively, it argues that if plaintiff is entitled to fees, the award

sought by plaintiff must be reduced to provide reimbursement only for the claim on which

plaintiff prevailed.

### A. Prevailing Party

To be deemed a prevailing party, WashTech must have "succeeded on any significant issue in litigation which achieve[d] some of the benefit [it] sought in bringing suit." *See Waterman S.S. Corp. v. Mar. Subsidy Bd.*, 901 F.2d 1119, 1121 (D.C. Cir. 1990) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791 (1989)) (internal quotations omitted). More specifically, a plaintiff must do more than trigger a voluntary change in the defendant's conduct, but instead it must achieve a "judicially sanctioned change in the legal relationship of the parties." *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

This Court previously found that DHS lacked good cause to bypass required notice-and-comment procedures when it promulgated the 2008 Rule. *Wash. Alliance of Tech. Workers*, 2015 WL 9810109, at *15. Because failure to adhere to notice-and-comment requirements "is a serious procedural deficiency that counsels against remand without vacatur," the Court ordered vacatur of the 2008 Rule and its subsequent amendments. *See id.* at *16. This relief was specifically sought in WashTech's complaint. (*See* Am. Compl. at 40-41 (seeking a declaration that "DHS unlawfully implemented the Rule without notice and comment and that the 2008 OPT Rule is therefore null and void").) Thus, as DHS repeatedly acknowledged before the Court of Appeals, WashTech "prevailed on the notice-and-comment [challenge]," because "the 2008 Rule that they detested no longer exist[s]." *See* Oral Argument Recording at 19:53, *Wash. Alliance of Tech. Workers v. U.S. Dep't of Homeland Sec.*, Case No. 15-5239 (D.C. Cir. May. 4, 2016); *see also id.* at 35:15 (WashTech has "gotten what they've wanted, they're victorious"). DHS now tries to backtrack from that concession, arguing that these "off-the-cuff comments . . . could not speak for this Court's past rulings," which purportedly show that plaintiff did not actually

prevail.  (*See* Def.'s Response Br. [ECF No. 62] at 6-7.)  The inescapable fact remains, however, that DHS's "off-the-cuff comments" were correct—plaintiff established that DHS committed a serious procedural violation that justified vacatur of the 2008 Rule.  In any sense of the word, plaintiff "prevailed" on that claim by securing a court-ordered change of the parties' legal relationship.  *See Buckhannon*, 532 U.S. at 605.

DHS's arguments to the contrary are unavailing.  It points to a number of claims on which it prevailed—rulings that plaintiff subsequently appealed (Def.'s Response Br. at 8-9)— but those claims are irrelevant for EAJA purposes.  A prevailing party need not win on its central claim, let alone every single claim it makes.  *See Tex. State Teachers Ass'n*, 489 U.S. at 790.

Nor is the analysis altered by the fact that DHS later promulgated a replacement rule, which neutralized the effect of vacatur.  Even if an agency later repromulgates the same rule, a party prevails when it gains the opportunity to provide comment, as plaintiff did here.  *See Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1257 (D.C. Cir. 1993) ("In the real world of the APA, an opportunity for comment—which the EDF did get—is not to be denigrated.").  This is not a situation in which plaintiff achieved some enhanced legal position that "increased the odds of [its] ultimately securing a real-world benefit."  *See Waterman*, 901 F.2d at 1123.  Rather, the vacatur of the 2008 Rule and plaintiff's opportunity to comment on its replacement was itself the "real-world benefit."  DHS's replacement rule may have made plaintiff's victory seem like a hollow one, but that victory is nonetheless sufficient for EAJA purposes.[2]  *Cf. Edmonds v. FBI*,

---

[2] DHS also suggests that WashTech's position "is most similar to the 'catalyst theory' rejected in *Buckhannon*."  (*See* Def.'s Response Br. at 9.)  This argument is baseless.  The "catalyst theory" applies when an agency takes some voluntary corrective action in response to the filing of a lawsuit, prior to a court's resolution of the suit.  *See Buckhannon*, 532 U.S. at 601.  Here, DHS took no voluntary action prior to the Court's resolution of the suit against it.  The catalyst theory is thus plainly inapplicable.

417 F. 3d 1319, 1323 (D.C. Cir. 2005) (court order requiring expedited processing of FOIA request sufficient to make plaintiff a prevailing party).

Plaintiff also remains a prevailing party despite the D.C. Circuit's subsequent finding of mootness and vacatur of this Court's judgment.  As DHS correctly notes, mootness does not affect prevailing-party status if the party received concrete relief that "could not be reversed despite [the] subsequent finding of mootness."  *See Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003).  Here, the Court of Appeals found mootness "because the 2008 Rule is no longer in effect," *Wash. Alliance of Tech. Workers*, 2016 WL 3041029, at *1, and the 2008 Rule is no longer in effect because of this Court's vacatur and DHS's promulgation of a new rule.  In other words, the relief that plaintiff received was not (and could not have been) reversed by the Court of Appeals, because DHS's response to that relief made the effect of vacatur permanent.  Having received concrete relief that could not have been reversed on appeal, plaintiff is a prevailing party under the EAJA.

### B. Substantially Justified

It is a closer question whether DHS's position—that it had good cause to bypass notice and comment—was "substantially justified."[3]  The Supreme Court has defined this phrase to mean "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (rejecting argument that government's position must have been "justified to a high degree").  This does not mean,

---

[3] DHS incorrectly argues that plaintiff waived any argument regarding substantial justification, because plaintiff's motion "never discusses this issue."  (Def.'s Response Br. at 10 n.3.)  Plaintiff was required only to "*allege* that the position of the United States was not substantially justified."  *See* 28 U.S.C. § 2412(d)(1)(B) (emphasis added).  Because plaintiff did so (Pl.'s Mot. at 3), the burden rests with DHS to show that its position was substantially justified.  *See Scarborough*, 541 U.S. at 414.

however, that attorney's fees must be denied as long as DHS's position was non-frivolous. *See id.* at 566. Thus, contrary to DHS's suggestion, the Court's statement that DHS "advanc[ed] a non-frivolous argument" for bypassing notice and comment does not end the analysis. *See Wash. Alliance of Tech. Workers*, 2016 WL 308775, at *4. Instead, the Court must consider whether DHS had a "reasonable basis in law and fact" to argue that it had good cause to bypass notice and comment. *See Pierce*, 487 U.S. at 566 n.2.

Because notice-and-comment rulemaking is the primary means of assuring informed agency decisions, it is well-established in this Circuit that any exception to the notice-and-comment requirement "will be narrowly construed and only reluctantly countenanced." *See New Jersey v. U.S. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980); *see also Am. Fed'n of Gov't Emps. v. Block*, 655 F.2d 1153, 1156 (D.C. Cir. 1981) (exceptions "are not 'escape clauses' that may be arbitrarily utilized at the agency's whim"). Notice and comment can only be avoided in truly exceptional emergency situations, which notably, cannot arise as a result of the agency's own delay. *Envtl. Def. Fund, Inc. v. EPA*, 716 F.2d 915, 920-21 (D.C. Cir. 1983). Courts have thus upheld emergency rulemakings where, for instance, the FAA needed to counteract "the threat of further terrorist acts involving aircraft in the aftermath of September 11, 2001," *Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C. Cir. 2004), or where "an entire industry and its customers were imperiled" by an imminent regulatory gap, *see Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93-94 (D.C. Cir. 2012) (discussing *Am. Fed'n of Gov't Emps.*, 655 F.2d at 1157). At the outset, then, it should have been clear to DHS that its good-cause argument faced a significant legal hurdle.

DHS argued that good cause existed "[b]ecause the Secretary faced an urgent situation in which tens of thousands of specially-educated individuals would have been required to leave this country just as the nation was plummeting into recession—resulting in irreparable harm to

critical sectors of the national economy as well as American universities." (*See* Def.'s Mot. for Summ. J. [ECF No. 27] at 1.)  The Court rejected this argument.  First, it found that DHS offered nothing concrete to substantiate its claims of a pending labor shortage, but spoke only in general terms about the importance of STEM workers to the economy.  *See Wash. Alliance of Tech. Workers*, 2015 WL 9810109, at *15.  More specifically, DHS did nothing to quantify the economic impact of delaying a rule until notice and comment could be completed.  *See id.* Furthermore, DHS could not show an "emergency" when it had been aware of the problem for years and had nonetheless failed to take action.  *See id.* ("Defendant does not explain why it waited to initiate proceedings on this issue, and it has not pointed to any changed circumstances that made the OPT extension suddenly urgent.").

Of course, DHS is correct when it argues that "a position can be [substantially] justified even though it is not correct." (*See* Def.'s Response Br. at 10.)  However, given its own delay in initiating rulemaking, DHS did not come close to establishing a bona-fide emergency, such that the Court could have "reluctantly countenanced" the avoidance of notice and comment.  *See New Jersey*, 626 F.2d at 1045; *see also Nat'l Res. Def. Council v. U.S. EPA*, 703 F.2d 700, 703, 712 (3d Cir. 1983) (agency "failed utterly" to show substantial justification because it could have complied with both notice and comment and a deadline imposed by Executive Order).  In this regard, the Court is guided by the D.C. Circuit's decision in *Environmental Defense Fund*, in which the EPA lacked substantial justification to argue that a self-created "emergency" entitled it to bypass notice and comment.  *See* 716 F.2d at 920-21.[4]  The agency had argued that it had no

---

[4] The Court recognizes that *Environmental Defense Fund* has been abrogated on two points, including the correct standard for showing substantial justification.  *See Buckhannon*, 532 U.S. at 601-02 (rejecting catalyst theory); *Pierce*, 487 U.S. at 567 (rejecting D.C. Circuit precedent requiring government to show that its position was "slightly more" than reasonable).  Nonetheless, its discussion of substantial justification remains instructive, because even under

choice but to immediately suspend an industry reporting requirement, without notice and comment, because the reporting deadline was only a week later. *See id.* The Court rejected this purported emergency, holding that the EPA had long planned to do away with the reporting requirement, deferring the previous year's requirement and later stating its intention to eliminate it altogether. *See id.* The agency could not then delay action until a week before the reporting deadline and then suddenly claim an "emergency." *See id.* at 921. Just so here, as DHS acknowledges that the purported emergency began in 2004, when "the visa numbers allocated for the H-1B program were reduced" from 195,000 to 65,000. (*See* Def.'s Mot. for Summ. J. at 43.) In fact, the agency's delay in responding is far longer than the EPA's eight-month delay in *Environmental Defense Fund*. *See* 716 F.2d at 921. It was therefore unreasonable for DHS to argue, after four years of inaction, that an ongoing labor shortage entitled it to proceed with an emergency rulemaking.

## C. Reasonable Fees and Expenses

Having concluded that WashTech is eligible to be reimbursed for the "reasonable fees and expenses of [its] attorneys," 28 U.S.C. § 2412(b), the Court must now determine what amount would be reasonable. Plaintiff bears the burden of establishing the reasonableness of its fee request. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004). It seeks an award $465,002.62, which represents all fees, expenses, and costs it has incurred in this matter, including those incurred in its unsuccessful appeal. (*See* Ex. 1 to Pl.'s Mot. [ECF No. 56-1].) DHS argues that plaintiff is only entitled to an award that reflects its limited victory, *i.e.*, reimbursement for only those fees related to the notice-and-comment claim. (*See* Def.'s

---

the correct, less stringent "reasonable" standard, the government would still have failed to meet its burden. *See Envtl. Def. Fund*, 716 F.2d at 921 (finding that "it was *not at all reasonable* for EPA to rely on the good cause exception") (emphasis added).

Response Br. at 12-15.)  Plaintiff responds that its claims were so interrelated that it would be impossible to distinguish which amounts were spent on that claim, and further, that it is unnecessary to do so because the unsuccessful claims were merely alternative grounds for reaching the outcome it ultimately achieved.  (*See* Pl.'s Reply Br. at 8-11.)

The Supreme Court has made clear that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).[5]  WashTech prevailed only on its notice-and-comment claim.  The Court rejected (1) three of its claims challenging the twelve-month, post-completion OPT program on standing grounds, *see Wash. Alliance of Tech. Workers*, 74 F. Supp. 3d at 252; and (2) its primary claim that DHS exceeded its statutory authority by issuing the 2008 Rule, *see Wash. Alliance of Tech. Workers*, 2015 WL 9810109, at *13.  Similarly, the Court later granted DHS's motion to extend the stay of vacatur, over plaintiff's opposition.  *See Wash. Alliance of Tech. Workers*, 2016 WL 308775, at *5.  Plaintiff's appeal also failed to secure any relief, as it was dismissed as moot in light of DHS's 2016 replacement rule.  *See Wash. Alliance of Tech. Workers*, 2016 WL 3041029, at *1.  Finally, as discussed (*see supra* at 5), the vacatur it was awarded did not prevent DHS from promulgating a replacement rule that is similar to the 2008 Rule.  Thus, there is no question that the award must be reduced in light of plaintiff's limited success in this action.

The Court finds both of plaintiff's arguments against a reduction to be unpersuasive. First, it is not true that each of its claims were simply "alternative legal grounds for a desired

---

[5] Although *Hensley* dealt with an award of fees under 42 U.S.C. § 1988, the standards it announced "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"  *Hensley,* 461 U.S. at 433 n. 7.  As discussed, the EAJA awards fees to a "prevailing party," 28 U.S.C. § 2412(d)(1)(A), and thus, *Hensley*'s standards are applicable here.

outcome." (*See* Pl.'s Reply Br. at 9 (quoting *Hensley*, 461 U.S. at 435).) The outcome it achieved—vacatur of the 2008 Rule, subject to DHS's later promulgation of a replacement rule—is far more limited than if the Court had accepted its overarching claim that DHS exceeded its statutory authority, since DHS could not then have promulgated the replacement rule. By the same token, the three claims dismissed for lack of standing challenged the entire OPT program, not just the 2008 extension (*see* Am. Compl. ¶¶ 155-186), so success on those claims would have certainly provided greater relief than plaintiff actually achieved.

Second, plaintiff misreads *Hensley* when it argues that reduction is only appropriate if its successful claim "can be easily compartmentalized" from its unsuccessful claims. (*See* Pl.'s Reply Br. at 9.) Instead, *Hensley* expressly states that if claims are interrelated and cannot be compartmentalized, the Court must consider whether "the expenditure of counsel's time was reasonable in relation to the [limited] success achieved." *See* 461 U.S. at 436; *see also George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1537 (D.C. Cir. 1992) ("*Hensley* does instruct that if successful and unsuccessful claims [are interrelated], then a court should simply compute the appropriate fee as a function of degree of success."); *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 122 (D.D.C. 2010) (reducing one attorney's fees 50% to reflect plaintiff's limited success). Therefore, to the extent that certain claims are interrelated, the Court will simply reduce the award sought to reflect WashTech's limited success on those claims. *See Hensley*, 461 U.S. at 436.[6]

---

[6] That said, WashTech is correct that the Supreme Court has rejected DHS's proposed method of reducing fees—awarding a fraction of fees that consists of the number of successful claims divided by total claims, or 1/9th of the total amount sought here. *See Hensley*, 461 U.S. at 435 n.11. Rather, the appropriate method involves a determination of what percentage of total fees accurately reflects plaintiff's level of success. *See id.* at 436.

There is no difficulty segregating fees related to plaintiff's appeal and opposition to DHS's motion for reconsideration—plaintiff achieved no success in this litigation after the Court's August 12, 2015 Opinion, and therefore, those amounts are not compensable.  *See Anthony v. Sullivan*, 982 F.2d 586, 589 (D.C. Cir. 1993) ("*Hensley* says loud and clear that when a party has obtained no favorable results in a particular aspect of a litigation, that party may receive no fee for work on that part of the case.").  WashTech also inexplicably seeks reimbursement for its New Jersey-based attorney traveling to and from Washington to testify before the Senate.  (*See* Ex. 1 to Pl.'s Mot. at 20.)  That testimony had no impact whatsoever on this litigation, so those amounts will also be denied in full.  However, the Court agrees that plaintiff's various challenges to the OPT program were interrelated (*see* Pl.'s Reply Br. at 9), and thus, true, issue-by-issue compartmentalization of the unsuccessful claims is not feasible.  *See Hensley*, 461 U.S. at 435 (noting that cases in which issue-by-issue compartmentalization is possible are "unlikely to arise with great frequency").  Thus, given this situation, the Court must exercise its "substantial discretion" to fix an award that would be reasonable in light of WashTech's lack of success on those challenges.  *See Comm'r, INS v. Jean*, 496 U.S. 154, 163 (1990).

In determining what is reasonable, it is noteworthy that the Court rejected plaintiff's "principal argument"—that DHS exceeded its statutory authority in promulgating the 2008 Rule—and it found that plaintiff lacked standing to bring three of its challenges to the OPT program as a whole.  Success on any of these claims would have secured far greater relief than plaintiff ultimately secured (*i.e.*, vacatur of a rule that was replaced in short order, and the opportunity to offer comment on the replacement rule).  The Court also finds that plaintiff, which bears the burden on this issue, provided scant detail in many of its time entries and block-billed

for multiple tasks in others. (*See, e.g.*, Ex. 1 to Pl.'s Mot. at 19-20 (attributing 63 hours to

entries labeled only "Supplemental Brief" and 15 hours to a single block-billed entry labeled

"Appendices, SJ Brief, Client calls, emails until 2:30 AM").) A modest fee reduction is

therefore appropriate on that basis. *See Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir.

1986) ("A fee award may be discounted as a result of poor documentation."). Finally, some

seven attorneys worked on this matter over time, and as a result, the Court finds that plaintiff's

fees were unjustifiably high. For instance, it employed three different attorneys to review and

revise their co-counsel's brief, which amounted to 26.2 hours of revision of a single filing. (*See*

Ex. 1 to Pl.'s Mot. at 8.) This unnecessary duplication of efforts on many tasks warrants another

modest reduction. *See Role Models Am., Inc.*, 353 F.3d at 973 (reducing plaintiff's award by

50% in part because of its attorneys' duplication of effort).

Therefore, especially in light of plaintiff's marginal victory, the Court finds that an award

of 15% of plaintiff's remaining fees and expenses is appropriate.


## CONCLUSION

For the foregoing reasons, plaintiff's motion for attorney fees is **GRANTED IN PART**

and **DENIED IN PART**. DHS shall reimburse plaintiff for 15% of its fees and expenses

incurred prejudgment, which as detailed in the attached Appendix amounts to $42,239.59. A

separate Order accompanies this Memorandum Opinion.


/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge


Date:   August 8, 2016

## APPENDIX

**Pre-Judgment Claims (incurred on or before the date of the Court's 8/12/15 Opinion)**

Fees:

| | | |
|---|---|---|
| Attorney JMM (2010): | 80 hours x $177.50/hour  = | $14,200.00 |
| Attorney JMM (2011): | 112 hours x $183.75/hour  = | $20,580.00 |
| Attorney JMM (2012): | 209 hours x $187.50/hour  = | $39,187.50 |
| Attorney JMM (2013): | 33 hours x $191.25/hour  = | $6,311.25 |
| Attorney JMM (2014): | 368 hours x $193.75/hour  = | $71,300.00 |
| Attorney JMM (2015): | 481 hours x $193.94/hour  = | $93,285.14 |
| Attorney GRR (2010): | 6 hours x $177.50/hour  = | $1,065.00 |
| Attorney GRR (2011): | 9.6 hours x $183.75/hour  = | $1,764.00 |
| Attorney GRR (2012): | 2.1 hours x $187.50/hour  = | $393.75 |
| Attorney GRR (2013): | 2.2 hours x $191.25/hour  = | $420.75 |
| Attorney GRR (2014): | 36.8 hours x $193.75/hour  = | $7,130.00 |
| Attorney GRR (2015): | 15.5 hours x $193.94/hour  = | $3,006.07 |
| Attorney MMH (2011): | 3 hours x 183.75/hour  = | $551.25 |
| Attorney MMH (2014): | 8.4 hours x 193.75/hour  = | $1,627.50 |
| Attorney MMH (2015): | 17.3 hours x 193.94/hour  = | $3,355.16 |
| Attorney MM (2011): | 9 hours x $183.75/hour  = | $1,653.75 |
| Attorney MM (2012): | 10 hours x $187.50/hour  = | $1,875.00 |
| Attorney DLW (2014): | 24.3 hours x $193.75/hour  = | $4,708.13 |
| Attorney DLW (2015): | 33.6 hours x $193.94/hour  = | $6,516.38 |

$278,930.63
x 15%

$41,839.59

Expenses and Costs:

Complaint Filing Fee:                                    $400.00

**TOTAL AWARD:**                              **$42,239.59**